## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

DELCIE T. FARMER,       )
                   )
      Plaintiff,      )
                   )
v.                  )     Civil Action No. 3:17CV342–HEH
                   )
HCA HEALTH SERVICES OF   )
VIRGINIA, INC., d/b/a      )
HENRICO DOCTORS' HOSPITAL,  )
                   )
      Defendant.    )

### MEMORANDUM OPINION
### (Defendant's Motion for Summary Judgment)

This action arises from HCA Health Services of Virginia, Inc., d/b/a Henrico Doctors' Hospital's ("HDH") alleged failure to hire, failure to accommodate, and wrongful discharge of Delcie T. Farmer ("Farmer"). Farmer, an individual suffering from a latex allergy, alleges that HDH's actions violated the Americans with Disabilities Act of 1990 ("ADA"), as amended, which prohibits discrimination on the basis of an individual's disability. 42 U.S.C. § 12101 *et seq.* This case is presently before the Court on HDH's Motion for Summary Judgment. Both parties have filed memoranda and exhibits supporting their respective positions. The Court heard oral argument on November 20, 2017. For the reasons that follow, the Court finds that there are material issues in dispute precluding an award of summary judgment under Fed. R. Civ. P. 56(a).

The gravamen of Farmer's Complaint is her assertion that HDH, based on alleged hospital practice or policy, denied her employment in their Pre-Admission Testing

("PAT") Department because of her prior history of latex allergy, without any bona fide individual assessment to determine if her condition could be reasonably accommodated. Farmer further maintains that HDH took no steps to quantify the presence of airborne latex particles in the PAT Department or determine if such particles could be controlled by reasonable remedial measures.

HDH counters that Farmer's allergy, which was purportedly in remission, did not constitute a disability under the ADA. Furthermore, the hospital emphasizes that the record evidence revealed no reasonable accommodation for Farmer's latex allergy in a hospital where latex gloves were used in some departments at the time she applied for the position. Relying on the testimony of Farmer's own allergist and prior medical history, HDH contends that employing Farmer in a non-latex free hospital could seriously endanger her health.

Summary judgment is appropriate if the record shows that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The evidentiary basis on which such motions are resolved may include depositions, answers to interrogatories, admissions on file, and affidavits. Fed. R. Civ. P. 56(c). As the United States Supreme Court held in *Anderson v. Liberty Lobby, Inc.*, the relevant inquiry in a summary judgment analysis is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." 477 U.S. 242, 251–52 (1986). In reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party—here, Farmer. *Id.* at 255.

Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48. A material fact is one that might affect the outcome of a party's case. *Anderson*, 477 U.S. at 248; *JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). A genuine issue concerning a material fact only arises when the evidence, viewed in the light most favorable to the nonmoving party, is sufficient to warrant a reasonable jury to return a verdict in that party's favor. *Anderson*, 477 U.S. at 248.

To defeat an otherwise properly supported motion for summary judgment, the nonmoving party must rely on more than conclusory allegations, "mere speculation or the building of one inference upon another[,]" or the "mere existence of a scintilla of evidence" concerning a material fact. *Stone v. Liberty*, 105 F.3d 188, 191 (4th Cir. 1997) (internal citations omitted). In meeting this burden, the nonmoving party must "go beyond the pleadings" and present affidavits or designate specific facts in depositions, answers to interrogatories, and admissions on file to establish a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). That being said, the nonmoving party cannot create a genuine issue of material fact by presenting a self-serving affidavit that contradicts their own prior deposition testimony. *Rohrbough v. Wyeth Labs., Inc.*, 916 F.2d 970, 975–76 (4th Cir. 1990).

Because HDH challenges Farmer's entitlement to prosecute her claims under the ADA, the Court must turn first to whether she is disabled as contemplated under that statute. Perhaps the most persuasive evidence is the testimony of Farmer's treating allergist, Jeffrey L. Schul, M.D. ("Dr. Schul"), who unequivocally testified in his deposition that Farmer's allergy, which in his opinion is incurable, if rekindled could endanger her health. According to Dr. Schul, as well as HDH's own expert, Dr. Bob Geng ("Dr. Geng"), latex exposure could adversely affect Farmer's breathing and immune system function, both of which qualify as major life activities or bodily functions under the ADA. 42 U.S.C. § 12102. HDH acknowledges that Farmer "has a severe latex allergy and when exposed to latex, she has reactions that can be life-threatening." (Def.'s Mem. Support Mot. Summ. J. 28, ECF No. 25.)

Given the clear potential for reoccurrence if Farmer is subjected to airborne latex particles, the fact that her condition was diagnosed by Dr. Schul as being in remission has little bearing on the disability analysis, at least at this stage of the proceedings. *See Class v. Towson Univ.*, 806 F.3d 236, 244 (4th Cir. 2015).

As highlighted during oral argument, there are a number of marginal, non-case dispositive facts at issue. The Court's task at this juncture is to focus on material facts—those essential to critical elements of Farmer's case and on which she will "bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. The Court's role at this stage is not to weigh the evidence, but simply to determine whether a genuine dispute exists, making it appropriate for the case to proceed to trial. *Anderson*, 477 U.S. at 249.

Farmer, a registered nurse, had been previously employed by HCA Health Services ("HCA") at other affiliated hospitals beginning around 2005. Early in her employment with HCA, Farmer experienced severe allergic reactions to airborne latex particles, limiting her access to certain areas of her assigned hospital and periodically requiring her to work from home. Furthermore, as an added safeguard measure against latex exposure, HCA converted a closet within the hospital into a small office equipped with an air filtration system. In 2007, Farmer's treating physician, Dr. Schul, wrote a letter indicating that she was still suffering from a latex allergy and should avoid exposure. (Def.'s Mem. Support Mot. Summ. J., Exh. 15.)

In 2009, while Farmer was employed by HCA, she experienced a respiratory reaction to poinsettias, which apparently have leaves containing a substance akin in composition to latex. Similarly, in early 2010, Farmer was treated for a rash attributed to wearing rubber shoes containing latex material. (Pl. Dep. 73–79, ECF No. 25-1.)

In April 2010, Farmer transferred to Spotsylvania Regional Medical Center, also a part of the HCA system. The Spotsylvania hospital had been designated as a latex safe facility. Farmer apparently experienced no serious allergic reactions while working in that environment. In August 2015, Farmer applied for, and was offered, a position in the PAT Department at HDH. The employment offer was subject to a pre-employment background investigation and a health assessment. During her interview, Farmer did not disclose her latex allergy. In the context of HDH's hiring process, her allergy was first

5

revealed during her health assessment on September 3, 2015.[1] This assessment included

a latex-specific RAST test which confirmed that Farmer's allergy was still active.

According to Farmer's proffered evidence, when HDH's Director of Employee

Health and Safety, Judith Justison ("Justison"), saw Farmer's name on a health screening

form on September 3, 2015, a decision was made to rescind the offer of employment

without further investigation. This decision, Farmer contends, was based solely on the

fact that she had an open workers' compensation claim with HDH, entered June 21, 2007,

finding that her latex allergy was an occupational disease for which HCA was responsible

under the Virginia Workers' Compensation Act. (Justison Dep. 61:19–62:6.)

Justison subsequently reported the prospective hiring of Farmer to Lisa Licata

("Licata"), HDH's Vice President of Human Resources. Justison and Licata discussed

the hospital's potential legal liability in employing Farmer. (Justison Dep. at 71:7-12–

72:4-10.) After her meeting with Licata, Justison sent an email to HDH's Director of

Occupational Health Services asking the Director to document Farmer as ineligible for

hire. (*Id.* at 38:12-23.)

Farmer testified in her deposition that she met with the Director of Occupational

Health Services, Nurse Practitioner Bruce Spiller ("Spiller"), on September 3, 2015. She

recalled discussing her latex allergy and medical history with Spiller and that Spiller

expressed no opposition to her employment in PAT. Spiller's only articulated

requirement was Farmer should carry an EpiPen. (Farmer Dep. at 121:20-21.) On her

---

[1] Plaintiff disputes that this was the date that HDH first "learned" of Plaintiff's allergy, given the fact that HCA, HDH's parent health system, was the entity that had handled Plaintiff's previous workers' compensation claim for latex allergy-related issues.

employee health screening form, Spiller indicated no need for restrictions on Farmer's employment. Apparently, some areas of HDH were deemed latex safe at that time.

On September 10, 2015, Justison wrote a letter to Dr. Schul seeking his opinion as to whether Farmer's latex allergy would allow her to function in the PAT Department of HDH, given that HDH was not a latex free facility. Dr. Schul responded several days later that, based upon Farmer's minimal reactive history for the previous seven years, he saw no reason to discourage her from accepting the position.

Several days after receiving Dr. Schul's letter, Justison informed Dr. Schul that the Spotsylvania Hospital, where Farmer had been employed for the last five years, was latex free, and that HDH was not. Farmer contends that this statement was false and calculated to cause the doctor to change his opinion. Justison concedes that her characterization of Spotsylvania Hospital as latex free was an error on her part. The Spotsylvania facility was latex safe, rather than latex free. Both parties acknowledge that no hospital is totally free of latex. Prior to receiving a response from Dr. Schul, HDH's Medical Director for Occupational Health, Dr. Dale Slagel ("Dr. Slagel"), concluded that Farmer was ineligible for hire. (Health Screening Form, ECF No. 31-9; Justison E-mail, ECF No. 31-10.) HDH represents that Dr. Slagel's opinion was based, at least in part, on unpredictable conditions due to renovations in areas of the hospital at that time.

Integral to HDH's defense, on October 1, 2015, Dr. Schul apparently altered his position and wrote to HDH that he recommended that Farmer avoid any possible workplace latex exposure as it could potentially put Farmer at risk of a significant allergic reaction. Based on potential latex exposure at HDH, Dr. Schul could not recommend a

7

reasonable accommodation unless she was assigned to a latex free environment. Although Justison, the Director of Employee Health and Safety, expressed her opinion that Farmer's latex allergy should preclude her from employment at HDH, in her deposition she conceded that Farmer could have performed the essential functions of the PAT position with any accommodations that may have been necessary. (Justison Dep. 23:18–24:4.) She amplified by adding that this was particularly true for areas of the hospital with minimal latex exposure. Justison also testified that HDH did not discontinue the use of latex gloves containing powder in its facility until December 2016.

Farmer conceded during her deposition that exposure to airborne latex particles could cause a serious allergic reaction. (Farmer Dep. 101–103.) Dr. Geng, HDH's medical expert, concurred in his expert report that exposure to airborne latex powder particles at HDH could have posed an unnecessary and substantial risk to Farmer's health. (Geng Report, ECF No. 25-6.)

On October 15, 2015, after advising Farmer that HDH had decided to rescind its offer of a position in the PAT Department because of potential latex exposure, HDH discussed with her alternative positions apparently in latex safe areas of the hospital. HDH suggested that she consider a position in the RN Transfer Center. Farmer declined to consider this position because she believed she was unqualified and preferred a job with patient contact. (Pl. Dep. 153:6–154:9, ECF No. 25-1.)

In further support of Farmer's contention that HDH rescinded its job offer solely because of her latex allergy and without consideration of any type of potential accommodation, she offers the sworn declaration of Patricia Aldredge ("Aldredge"), a

8

nurse practitioner employed by HDH. Aldredge, who also has a latex allergy, stated that Justison advised her in November 2015 that "if you ever leave here, you could never be hired here again." (Aldredge Decl. ¶ 26, ECF No. 31-3.) According to Aldredge, the clear import of the comment was that no one with a latex allergy would be hired. (*Id.* at ¶ 26.) Aldredge further stated in her declaration that she had been employed at HDH, where Farmer sought the PAT position, from 2006 to 2015 without any need for accommodation of her latex allergy. However, as HDH points out, the record is devoid of any medical history explaining the extent of Aldredge's latex allergy.

While couched as only two counts in the Complaint, Farmer has technically raised three claims in this action, all arising from the ADA: (1) HDH discriminated against her on the basis of her disability by failing to hire her; (2) HDH discriminated against her on the basis of her disability by unlawfully discharging her; and (3) HDH failed to accommodate her disability. (Compl. 8–9, ECF No. 1-1.)

"Although the prima facie elements of [these claims] under the ADA are distinct, the claims share a common requirement: the plaintiff must be within the ADA's protected class." *Rohan v. Networks Presentations LLC*, 375 F.3d 266, 272 (4th Cir. 2004).[2] "One

---

[2]  "In order to establish a prima facie case of failure to hire under the ADA, the plaintiff must prove by a preponderance of the evidence that: (1) [s]he is within the ADA's protected class; (2) [s]he applied for the vacant position in question; (3) [s]he was qualified for that position; and (4) the defendants rejected [her] application under circumstances that give rise to an inference of discrimination." *Wilson v. Dollar Gen. Corp.*, 122 F. Supp. 3d 460, 464 (W.D. Va. 2015) (quoting *Malone v. Greenville Cnty.*, Case No. 6:06-2631-RBH, 2008 U.S. Dist. LEXIS 86520, 2008 WL 4557498, at *9 (D.S.C. Aug. 11, 2008) (citing *Heiko v. Colombo Savings Bank, F.S.B.*, 434 F.3d 249, 258 (4th Cir. 2006))); *see Perry v. Computer Scis. Corp.*, 2010 U.S. Dist. LEXIS 99709 at *11–12 (E.D.Va. Sep. 21, 2010) (citing *Mackey v. Shalala*, 360 F.3d 463, 468 (4th Cir. 2004); *Brown v. McLean*, 159 F.3d 898 (4th Cir. 1998)).

To state an ADA unlawful discharge claim, a plaintiff must show that (1) she was a qualified individual with a disability; (2) she was terminated; (3) she was fulfilling the legitimate expectations of

is within the ADA's protected class if one is a 'qualified individual with a disability.'" *Id.*

(quoting *Haulbrook v. Michelin N. Am., Inc.*, 252 F.3d 696, 702 (4th Cir. 2001); 42

U.S.C. § 12112). "A 'qualified individual' is 'an individual who, with or without

reasonable accommodation, can perform the essential functions of the employment

position . . . .'" *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013) (quoting

42 U.S.C. § 12111(8)). "Thus, to survive summary judgment, [Plaintiff must] produce

evidence that she is both qualified and disabled," or the Court must find that a genuine

dispute of material fact exists as to either of those requirements. *Rohan*, 375 F.3d at 272;

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). Whether Farmer has the

requisite job skills does not appear to be at issue.

Whether a person is disabled is an individualized inquiry particular to the facts of

each case. *Taylor v. Fed. Express Corp.*, 429 F.3d 461, 463 (4th Cir. 2005). Here,

Farmer's severe latex allergy appears to substantially limit her ability to perform a major

life activity, as discussed above, compared to most people in the general population.

However, an impairment need not prevent or severely restrict the individual from

performing a major life activity. 29 C.F.R. § 1630.2(j)(1)(ii) 2014. The term

"substantially limits" is not meant to be a demanding standard. 29 C.F.R.

§ 1630.2(j)(1)(i).

---

her employer; and (4) the circumstances of the discharge raise a reasonable inference of unlawful discrimination. *Reynolds v. Am. Nat'l Red Cross*, 701F.3d 143, 150 (4th Cir. 2012).

Finally, to establish a prima facie case in an ADA failure-to-accommodate claim, a plaintiff must prove: (1) she has a disability within the meaning of the ADA; (2) the employer had notice of this disability; (3) with a reasonable accommodation, she could perform the essential functions of the position; and (4) the employer refused to make such an accommodation. *See Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013); *Rhoads v. FDIC*, 257 F.3d 373, 387 n.11 (4th Cir. 2001).

As the United States Court of Appeals for the Fourth Circuit noted in *Halperin v. Abacus Tech. Corp.*, "an individual is 'otherwise qualified' only if he is 'able to meet all of a program's requirements in spite of his handicap.'" 128 F.3d 191, 197 (4th Cir. 1997) (citing *Southeastern Cmty. Coll. v. Davis*, 442 U.S. 397, 406 (1979)). Farmer bears the burden of demonstrating that she is otherwise qualified.

The record evidence is ample to make a prima facie demonstration of a disability at this stage of the proceedings. Alternatively, HDH certainly regarded Farmer as disabled in declining to employ her. Medical experts on both sides appear to agree that Farmer has a severe, incurable allergy to latex which could potentially be life-threatening. Both Dr. Schul and Dr. Geng concur there is no reasonable accommodation for her condition if she is in fact exposed to airborne latex particles. Furthermore, there appears to be no dispute that Farmer possesses the requisite skills to perform the essential functions of the PAT position. The central issue that emerges is whether the work environment in the PAT Department had a hazardous level of airborne latex particles. Plaintiff offered credible evidence that the PAT and Oncology Departments and the cafeteria had all discontinued use of latex powder gloves by September 2015. (Aldredge Decl. ¶¶ 14, 17; Davy Dep. 28:19-22, ECF No. 42-2.) However, without some quantification of the airborne latex level at the PAT area of the hospital, none of the experts could accurately evaluate her potential risk of an adverse reaction.

HDH counters that simply because gloves with latex powder were not in use in the PAT Department, does not mean the facility, as a whole, was a latex safe environment because airborne particles could travel through the hospital's HVAC system. However,

11

no measurement of such particles was taken, and no showing has been made that the PAT department HVAC system was interconnected with that of other departments that continued to use latex powder gloves. (Licata Dep. 38:1-22.) The expert opinions of Dr. Schul and Dr. Geng are obviously predicated on the assumption that airborne latex particles are present in the work environment at HDH. However, there is no evidence in the present record to support this critical assumption.[3] Finally, HDH has been unable to affirmatively identify any specific department(s) where latex powder gloves were in use in September 2015; HDH merely relies on the statement that it banned the use of such gloves in December of 2016 to support the inference that such gloves were in use. (Justison Dep. 4.) Contrary to HDH's position, Farmer therefore contends that the discontinuation of use of latex gloves at HDH, as she requested, would not have been an unduly burdensome accommodation.

Viewed in the light most favorable to the non-moving party—Farmer—this Court must conclude that there is a genuine issue of material fact precluding summary judgment at this juncture, namely, whether Farmer was qualified for the PAT position without accommodation. To conclude otherwise would require this Court to engage in impermissible speculation as to the existence and level of airborne latex in the PAT work environment.

---

[3] With respect to reasonable accommodations, if necessary, Farmer mentioned the banning of gloves with latex powder from the hospital generally. HDH indicated that the burden and potential cost of prohibiting such gloves would be an undue hardship. HDH has offered no evidence to support its defense of undue hardship, and in fact, HDH officially adopted a ban on such gloves in 2016. (Justison Dep. 4:16–5:16.)

Based on the foregoing analysis, the Defendant's Motion for Summary Judgment will be denied.

An appropriate Order will accompany this Memorandum Opinion.

/s/

Henry E. Hudson
United States District Judge

Date: Dec. 12, 2017
Richmond, VA

13